IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs February 26, 2019

## STATE OF TENNESSEE v. TOREY MARTEZ UNDERWOOD

**Appeal from the Criminal Court for Knox County**
**No. 108578     Scott Green, Judge**

_____

### No. E2018-00811-CCA-R3-CD

_____

The defendant, Torey Martez Underwood, appeals the Knox County Criminal Court's denial of alternative sentencing for his guilty-pleaded conviction of attempted second degree murder.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and D. KELLY THOMAS, JR., JJ., joined.

John Halstead, Assistant District Public Defender, for the appellant, Torey Martez Underwood.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Charme Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On November 20, 2017, the defendant, Torey Martez Underwood, pleaded guilty to one count of attempted second degree murder.  Pursuant to the plea agreement, the defendant received an agreed-upon sentence of nine years as a Range I offender, and the State dismissed the charge of attempted first degree murder.  After a sentencing hearing, the trial court ordered the defendant to serve the entire sentence in confinement.  The defendant filed this timely appeal, asserting that the trial court erred by imposing a fully-incarcerative sentence.

At the plea submission hearing, the State provided the following summary of the offense:

[T]he defendant was married to a woman named Jessica Underwood, who had a child with the victim in this case, Noel Djenini.

. . . [T]he parties had met at a location on East Magnolia on April the 23rd, 2016 in Knox County for the purpose of Mr. Djenini seeing his four year-old child. Apparently there was an argument between Mr. Djenini and Jessica Underwood. . . . Mr. Djenini was outside his vehicle, was in front of a business place. And . . . Jessica Underwood said some things to the defendant, . . . who was in the vehicle with her. He got out of the vehicle. The assault on Mr. Djenini was on video. The video . . . shows that Mr. Djenini ha[d] his back to the defendant. There [wa]s absolutely no conversation between them. No altercation. And the defendant jumped him.

The [defendant] . . . stabbed him four times causing serious bodily injury. He then fled the scene. Mr. Djenini received a stab wound to his heart that would have been lethal without medical intervention. He was stabbed behind the left ear. He was stabbed [in] another place in the back. It was not a life threatening injury. And he was stabbed very close to his spinal column in the back with the fourth wound. . . . [H]e was very close, . . . had he not received medical intervention[,] to death.

He was in the hospital for several days. After his discharge, he was out of work for about three and a half months. And had a very long, prolonged rehab. This was an unprovoked assault . . . according to the witnesses who were present at the case . . . .

The defendant added to the State's summary that Ms. Underwood asked the defendant "what kind of man doesn't stand up for his wife[?]" and "why didn't you do anything?" The defendant stated that it was "after hearing his wife say all these things to him that [he] then went and committed this crime."

At the sentencing hearing, the defendant made a brief statement, but neither the defendant nor the State called any witnesses. The victim was not present at the

hearing, but the presentence investigation report containing a victim impact statement was exhibited to the hearing. An enhanced probation report was also exhibited. The presentence investigation report showed that the defendant's criminal history included only one misdemeanor conviction for a driving violation and a dismissed charge for domestic assault. The State requested a fully-incarcerative sentence, emphasizing that the defendant was deemed "a high risk for violence," had few family connections, was not employed, did not graduate from high school, and had anger and mental health issues. The defendant argued for a split confinement sentence highlighting that his only prior conviction was for a driving offense, his limited cognitive abilities made it difficult for him to maintain stable employment, he suffered from "a heart problem," and he committed the present offense only after Ms. Underwood provoked him. The defendant explained that he had arranged to receive treatment at Cherokee Health and to continue consulting with a social worker if he were granted an alternative sentence.

In rendering its decision to impose a fully-incarcerative sentence, the trial court considered the severity of the crime, the injury to the victim, and the fact that the crime was committed in front of the victim's young child[1] and ordered the defendant to serve his full sentence in confinement.

The defendant appeals the imposition of a fully-incarcerative sentence, arguing that the defendant "was an appropriate candidate for alternative sentencing" but that the trial court "focused solely on the severity of the offense" without considering "the factors favoring alternative sentencing." The defendant further asserts that his offense was "not an especially violent or horrifying attempted second degree murder." The State contends that the trial court did not err.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 706 n. 41 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard

---

[1]     Although the trial court identified the victim's son as being three years old at the time of the offense, the facts recited at the plea submission hearing indicated that the child was four years old.

of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Although the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence, see T.C.A. § 40-35-103(5), "[c]onvicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" are not considered favorable candidates for alternative sentencing, *id.* § 40-35-102(5)-(6)(A).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1). When the circumstances of the offense serves as the sole basis for denying alternative sentencing, those circumstances must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." *State v. Hartley*, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991).

In determining the manner of service of the defendant's sentence, the trial court pointed to the severity of the offense, the serious injury to the victim, and that the offense was committed in the presence of the victim's young son. The record supports

these findings. The defendant's criminal record reveals only a prior conviction for a misdemeanor driving violation and a dismissed charge of domestic assault, and he has no prior violations of non-incarcerative sentences. As such, the denial of alternative sentencing in this case was based solely on the circumstances of the offense. The record shows that the defendant attacked the victim from behind, stabbing him four times and causing life-threatening injuries that required the victim to undergo open heart surgery. Committing such an offense in the presence of a four-year-old child satisfies the requirement that the offense be "especially violent, horrifying, shocking, reprehensible, [and] offensive." *See Hartley*, 818 S.W.2d at 374. The circumstances of this offense support the trial court's denial of alternative sentencing.

Accordingly, we discern no error in the trial court's decision to impose a fully-incarcerative sentence, and we affirm the judgment of the trial court.

_____

JAMES CURWOOD WITT, JR., JUDGE

-5-